Original

Robert Webb Jr.
198 Peachtree Ct
Riverdale, GA  30274

RECEIVED IN CLERK'S OFFICE
U.S.D.C.  Atlanta

MAY 21 2010

JAMES N. HATTEN, Clerk
By: _____ Deputy Clerk

# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF GEORGIA

ATLANTA DIVISION.

TCB

1 10 CV - 1561

| | | |
|---|---|---|
| Robert Webb Jr., | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | **COMPLAINT** |
| | ) | |
| vs. | ) | **TILA (15 U.S.C. § 1635),** |
| | ) | |
| JPMORGAN CHASE BANK, NATIONAL | ) | **Quiet Title,** |
| ASSOCIATION, ISAOA; | ) | |
| | ) | **FDCPA (15 U.S.C. § 1692),** |
| ONEWEST BANK, F.S.B, ISAOA; | ) | |
| | ) | **RESPA (12 U.S.C. § 2601 et seq.),** |
| MERSCORP, INC.; | ) | |
| | ) | **Conspiracy to Commit Fraud and** |
| MORTGAGE ELECTRONIC REGISTRATION | ) | **Conversion,** |
| SYSTEMS, INC.; | ) | |
| | ) | **Conspiracy To Commit Fraud** |
| MCCURDY & CANDLER, L.L.C.; | ) | **Related To MERS System,** |
| | ) | |
| ANTHONY DEMARLO; | ) | **Unjust Enrichment,** |
| | ) | |
| | ) | **Fraud in the Inducement,** |
| | ) | |
| | ) | **Injunctive Relief,** |
| | ) | |
| | ) | **Declaratory Relief,** |
| UNKNOWN OWNERS OF THE EVIDENCE OF | ) | |
| THE DEBT and/or OWNERS OF THE NOTE; | ) | **[ Injunctive Relief Requested]** |
| | ) | |
| Defendants. | ) | **[Supplemental State Claims]** |

COMPLAINT

1

## Preliminary Statement

1.      Plaintiff has received notice that his property will be subjected to foreclosure or sale next **June 1, 2010**. The entity doing the foreclosure is not named in the closing papers and there is no recorded Assignment.   **Plaintiff seeks a preliminary injunction against an imminent foreclosure sale of his home against Defendants.**

2.      In this Complaint, allegations marked (*) are made upon information and belief, and are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

3.      Plaintiff is a member of a class of similarly situated individuals whose properties have been and are being foreclosed upon by entities that are not named in the loan documents.

4.      Plaintiff seeks a preliminary injunction against an imminent foreclosure sale of his property against Defendants.

## STATEMENT OF THE CASE

5.      This case arises because the Plaintiff is becoming the victim of an unlawful foreclosure because the Defendants threaten in the near future to foreclose on the property of the Plaintiff. This foreclosure is based upon a mortgage and note that are no longer held by the same entity or party, or is based upon a mortgage that was flawed at the date of origination of the loan, because Mortgage Electronic Registration Service (MERS) was named as the beneficiary or nominee of the lender on the mortgages. Further, the loan is the actions of each of the Defendants in violation of various federal and state laws. The Defendants have attempted to foreclose and have actually foreclosed on many properties when they do not have a lawful right to foreclose. Plaintiff is at

COMPLAINT

imminent risk of losing his property because one or more of the Defendants has served Notice of Sale upon him, and Plaintiff hereby seeks emergency injunctive relief and damages.

6.      Other persons are similarly situated whose properties have been fraudulently and/or unlawfully foreclosed upon by Defendants on MERS mortgages, each such foreclosure having been commenced and advanced in furtherance of the conspiracy pursuant to which every Defendant herein aided and abetted, and/or participated with and/or conspired with the other named Defendants in the wrongful course of conduct or otherwise caused the damages and injuries claimed herein and are responsible in some manner for the acts, occurrences and events alleged in this Complaint.

7.      The lender named in the original Mortgage (dated May 10, 2007) was INDYMAC BANK, F.S.B, A FEDERALLY CHARTERED SAVINGS BANK.

8.      A search of the county records revealed no assignment of the mortgage whatsoever.  There was no assignment to JPMORGAN CHASE BANK.  Defendants are not aware of any evidence connecting JPMORGAN CHASE BANK to the mortgage.

9.      Therefore, JPMORGAN CHASE BANK is not the real party in interest.

10.     There are many cases showing that only the real party in interest may foreclose.

## Jurisdiction and Venue

11.     Jurisdiction is under including but not limited to 12 U.S.C. § 2614;  28 U.S.C. §§ 636, 1251, 1331, 1332, 1338, 1345, 1346, 1348, 1362, 1367, 1491, 1652, 2201; 12 U.S.C. §§ 632, 2605(f), 2607(d)(2), 2610, 3416;  15 U.S.C. §§ 4, 45, 687c, 1051, 1121, 1601, 1640, 1641(a), 1692k, 1681p. The Plaintiff requests that this Court invoke its supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

3

COMPLAINT

12.     Venue for this action lies in this district since:

(a) Defendants are subject to personal jurisdiction of the State of Georgia and have sufficient contacts with this district under 28 U.S.C. § 1391 (b)(2).

(b) Substantial acts and omissions in this action occurred in this district under 28 U.S.C. § 1391 (b) (2) and/or (c).

13.     This matter is properly filed in this District. The claims arose in this District and all Defendants reside and/or do business in this District.

**Parties**

14.     Plaintiff is a citizen of Georgia.

***LENDER ONEWEST / INDYMAC***

15.     Defendant ONEWEST BANK, F.S.B, ISAOA ("OneWest") is a Federally chartered corporation with offices at 888 E Walnut St, Pasadena, CA 91101, P.O. Box 7056, Pasadena, CA 91109-9699.

16.     ONEWEST BANK, F.S.B owns, and is responsible for the actions of, INDYMAC BANK, F.S.B, A FEDERALLY CHARTERED SAVINGS BANK (collectively "Lender") and acquired its liabilities along with its assets.  On March 19, 2009, the FDIC completed its sale of INDYMAC FEDERAL BANK to ONEWEST BANK GROUP LLC.

17.     Non-party INDYMAC BANK, F.S.B, A FEDERALLY CHARTERED SAVINGS BANK ("Indymac") is a Federally chartered corporation with offices at 888 East Walnut Street Pasadena, CA 91101.

18.     INDYMAC keeps accounting entries for each of its loans in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity resulting from the loans.

4

COMPLAINT

These accounting ledger entries can be produced in a form similar to that described in accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul D. Kimmel, Jerry J. Weygandt, and Donald E. Kieso (Wiley, 2006). These accounting ledger entries show whether or not Plaintiff received a loan from INDYMAC. Under the "matching" principle of GAAP, INDYMAC can produce a ledger showing all costs and revenues resulting from each of its loans. INDYMAC keeps records for all loans in a form ready to produce for government inspection in case of an audit.

## *MERSCORP AND MERS*

19.     Defendant MERSCORP, INC. is a Delaware corporation which wholly owns, and is responsible for the actions of, Defendant MERS.  Its shareholders are various companies engaged in the business of mortgage banking.[1]

20.     Defendant MERSCORP, INC. has its principal place of business in Vienna, Virginia and can be served with process through its registered agent, C T Corporation System, 100 S. 5th Street, #1075, Minneapolis MN, 55402.

21.     (*) MERSCORP, INC. has no other function than to own MERS, and conducts no business in its own name.

---

[1] MERSCORP's shareholders include: ABN-AMRO Mortgage Group, Inc.; American Land Title Association; CCO Mortgage Corporation; Chase Home Mortgage Corporate of the Southeast; CitiMortgage, Inc.; Commercial Mortgage Securities Association; Corinithian Mortgage Corporation; Countrywide Home Loans, Inc.; EverHome Mortgage Company; Fannie Mae; First American Title Insurance Corporation; Freddie Mac; GE Mortgage Services, LLC; GMAC Residential Funding Corporation; Guaranty Bank; HSBC Finance Corporation; Merrill Lynch Credit Corporation; MGIC Investor Services Corporation; Mortgage Bankers Association; Nationwide Advantage Mortgage Company; PMI Mortgage Insurance Company; Stewart Title Guaranty Company; SunTrust Mortgage, Inc.; United Guaranty Corporation; Washington Mutual Bank; Wells Fargo Bank, N.A., and BNC Mortgage Corporation.

22.    Defendant MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS") is a nonprofit organization and is a wholly-owned subsidiary of MERSCORP, INC.

23.    MERS is incorporated in Delaware and has its principal place of business in Vienna, Virginia and can be served with process through its registered agent, Sharon Horstkamp, 1818 Library Street, Ste. 300, Reston, VA 20190-0000. MERS is not in good standing in Delaware.

24.    (*) MERS was created by the mortgage industry to enable high-speed trading of loans, and packaging of loans into pools, via electronic means, without recording any Assignments in the county property records. MERS' computer software was written by Ross Perot's company, EDS. MERS possesses user manuals for all such software.

25.    However, from a legal point of view, the computer/electronic aspect of MERS is not significant. Everything that MERS does, and everything that is done through MERS, could have been done before the age of computers, using traditional oral and written communication methods.

26.    (*) There is no government agency that regulates or oversees MERS.

27.    (*) MERS has never provided information from its computer system in any court case.

28.    (*) Defendant JPMORGAN CHASE BANK, NATIONAL ASSOCIATION is a member of MERS.

29.    (*) Defendant ONEWEST BANK, F.S.B is a member of MERS.

30.    (*) Non-party INDYMAC BANK, F.S.B, A FEDERALLY CHARTERED SAVINGS BANK is a member of MERS.

31.    (*) A mortgage company, servicer, or other company that wishes to become a member of MERS may apply for membership, and after acceptance, receives a MERS Manual and Rules of Membership and may trade and package loans using MERS' computer system.

COMPLAINT

32.    (*) Defendant(s) UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or

OWNERS OF THE NOTE is (are) a member(s) of MERS.

33.    Defendant MCCURDY & CANDLER, L.L.C. is ANTHONY DEMARLO's employer and

is a law firm with offices at 3525 Piedmont Rd. NE, Building 6, Suite 700, Atlanta, GA 30305, and

can be served with process at its office.

### UNKNOWN OWNERS

34.    (*) Defendant UNKNOWN OWNERS OF THE EVIDENCE OF THE DEBT and/or

OWNERS OF THE NOTE is an unknown entity, which will be named after discovery.

### Factual Allegations:

All the following allegations are intended to be "without limitation" and will be

supplemented by other facts to be found in discovery.

35.    At all relevant times, Plaintiff were and is the owner of the property at **198 Peachtree Ct,**

**Riverdale, Georgia** legally described as:

> ALL THAT TRACT OR PARCEL OF LAND LYING AND BEING IN LAND LOT 245
> OF THE 13TH DISTRICT OF CLAYTON COUNTY, GEORGIA AND BEING LOT 36,
> BLOCK M OF CLAYTON RIDGE, UNIT VI, AS PER PLAT RECORDED AT PLAT
> BOOK 13, PAGE 192, CLAYTON COUNTY, GEORGIA RECORDS, WHICH PLAT IS
> HEREBY REFERRED TO AND MADE A PART OF THIS DESCRIPTION. BEING
> IMPROVED PROPERTY KNOWN AS NO. 198 PEACHTREE COURT, RIVERDALE,
> GEORGIA 30274, ACCORDING TO THE PRESENT SYSTEM OF NUMBERING
> HOUSES IN CLAYTON COUNTY, GEORGIA AND BEING THE SAME PROPERTY
> CONVEYED TO ROBERT WEBB BY VIRTUE OF A WARRANTY DEED DATED
> January 26, 2007 AND RECORDED AT DEED BOOK 09023, PAGE 474, CLAYTON
> COUNTY, GEORGIA RECORDS.

(hereafter "the Property").

36.    At all relevant times Plaintiff is, and has been, in continuous possession of the Property.

37.    Plaintiff did not make a forcible entry into the Property.

38.   Plaintiff is not unlawfully holding the possession of the Property by force.

39.   Plaintiff has never sold the Property.

40.   Plaintiff is an unsophisticated borrower. The broker recognized this and used manipulative tricks.

41.   (*) Indymac and any successor(s), with their greater experience, knew that the loans were unaffordable and would go into default. Indymac cannot put itself in harm's way and then expect sympathy from this Court.

42.   (*) Indymac paid the loan broker a kickback to steer Plaintiff into those loans.

### THE MORTGAGE

43.   On May 23, 2007, INDYMAC BANK, F.S.B., C/O DOCUMENT MANAGEMENT recorded as Instrument Number BK09126PG342, a "SECURITY DEED" (MIN 100055401262491840, Loan No. 126249184LM), ("Mortgage") dated May 10, 2007, naming INDYMAC BANK, F.S.B, A FEDERALLY CHARTERED SAVINGS BANK as Lender and ROBERT WEBB JR, A SINGLE MAN as "Borrower," to secure "the promissory note signed by Borrower and dated May 10, 2007 [in the amount of] 96,800.00" ("Note").

44.   The SECURITY DEED was a boilerplate adhesion contract drafted by Indymac in which the purported extended consumer credit was subject to a finance charge and was initially payable to Indymac on the face of the Note.

45.   The Loan was a federally related mortgage loan.

46.   The alleged obligations were secured by the Property.

47.    The SECURITY DEED stated: "MERS is a separate corporation that is acting solely as nominee for Lender [Indymac] and Lender's successors and assigns.  MERS is the GRANTEEee under this Security Instrument."

48.    (*) However, MERS has never owned any beneficial interest under the SECURITY DEED. MERS did not provide any capital for the Loan. MERS has never been the recipient of any loan repayment made by Plaintiff.

49.    (*) MERS had one or more contracts with Indymac relevant to the Property.

50.    (*) The party for whom MERS was acting as nominee has changed, however MERS conceals the identity of the party for whom MERS was acting as nominee, and falsely represents that MERS is still nominee for the party named in the MORTGAGE.

51.    (*) When a loan goes into default, or when a loan is the subject of a lawsuit, MERS routinely records an assignment from the first owner – the one named in the Mortgage or Deed of Trust – to the current owner; however, by that time, MERS is no longer acting as nominee for the first owner, and there is in fact no assignment directly from the first member to the current member.  In other words, MERS records a false chain of title.

52.    (*) MERS has gone to great lengths to conceal and hide the beneficial owners and holders in due course of various mortgage loans and pools of loans.  MERS has never directly produced information from the MERS® System to third parties, in discovery or otherwise. Rule 9, Section 1(b) of the Rules of Membership states that MERS has

> "no ownership rights whatsoever in or to any information contained on the MERS®
> System." It is our position that the information contained on the MERS® System is
> the private, proprietary property of our Members, and that the information should
> be produced, if at all, by the Member who owns the information. This approach
> protects the privacy of the information, and allows our Members to control how and
> when it is distributed.

COMPLAINT

9

53.     (*) The information contained in MERS' computer system shows all investors, servicers, subservicers, and the document custodian who actually is the entity with physical possession of the note. Such information is easily produced.

54.     (*) MERS keeps records of due diligence and quality control reports; custodian exception reports; reports of investigations of such loss, theft or destruction; the last sign in and sign out of the promissory note via the custodian's records and register; and receipts of the last mailing or transfer of such note, which are generally made via overnight delivery and/or registered mail.

55.     (*) In at least 50% of foreclosure cases, MERS has claimed the note is lost, but has never filed police or insurance reports, and the "loss" fails to be reflected in the documents listed in the preceding paragraph.

56.     (*) MERS never paid any consideration for either Mortgage.

57.     (*) BNC knowingly inserted into the documents several false and/or conclusory statements.

58.     (*) No one ever paid any consideration for the aforementioned Notes.

59.     (*) The Notes have subsequently been pledged as collateral for other secured transactions.

60.     The Note stated: "In return for a loan which I have received, I promise to pay U.S. $96,800.00 to the order of ... INDYMAC BANK, F.S.B, A FEDERALLY CHARTERED SAVINGS BANK ..."

61.     (*) In fact, Plaintiff had not received any loan from Indymac.

62.     (*) Indymac keeps accounting entries for the Mortgage in a "general ledger" or other ledger, showing all changes to Assets, Liabilities and Owner's Equity which were caused by the Mortgage.  These accounting ledger entries can be produced in a form similar to that described in

COMPLAINT

10

accounting textbooks such as Intermediate Accounting by Donald E. Kieso, Jerry J. Weygandt, and

Terry D. Warfield (Wiley, 2003), and Financial Accounting by Paul D. Kimmel, Jerry J.

Weygandt, and Donald E. Kieso (Wiley, 2006). These accounting ledger entries show whether or

not Plaintiff received a loan from Indymac.

63.     (*) Under the "matching" principle of GAAP, BNC can produce a ledger showing all costs

and revenues resulting from the Loan.

64.     (*) Indymac keeps records for all loans, including the Loan, in a form ready to produce for

government inspection in case of an audit.

65.     (*) The Note was endorsed in blank and treated as bearer paper

66.     (*) The Note was not negotiated to MERS for value.

67.     (*) The Note was not negotiated to its current holder for value.

68.     The Loan was a "consumer credit transaction" within the meaning of TILA, 15 U.S.C. §

1602 and Regulation Z.

69.     (*) At all times relevant to this action, Indymac regularly extended and offered to extend

consumer credit subject to a finance charge or which, by written agreement, is payable in more

than four installments (not including a down-payment) and offered services in support thereof, thus

Indymac is a "creditor" under 15 U.S.C. § 1602(f)(1).

70.     Indymac was "the creditor" under 15 U.S.C. § 1635(a).

71.     The Note stated:

> "Loan" means the loan evidenced by this Note. ... You agree that we are making this
> Loan directly to you.

COMPLAINT

11

72.    (*) In fact, "INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK,

FSB" did not make a loan directly to Plaintiff.

73.    (*) The Loan was sold before it was funded.

74.    (*) INDYMAC did not lend its assets to Plaintiff nor for Plaintiff's benefit.

75.    (*) INDYMAC did not lend the assets of its depositors, investors, sub-lenders, partners,

contractors, or any similar third party, to Plaintiff nor for Plaintiff's benefit.

76.    (*) INDYMAC did not lend any money to Plaintiff nor for Plaintiff's benefit.

77.    (*) INDYMAC did not lend nor provide any "dollars," as defined by Congress, to Plaintiff

nor for Plaintiff's benefit.

78.    (*) INDYMAC did not lend any Federal Reserve Notes to Plaintiff nor for Plaintiff's

benefit

79.    (*) INDYMAC did not lend its credit to Plaintiff nor for Plaintiff's benefit.

80.    (*) INDYMAC recorded its Mortgage, falsely naming MERS as the original mortgagee.

81.    (*) However, MERS was not the true original mortgagee.

82.    (*) The Mortgage is part of a loan pool covered by a Pooling and Servicing Agreement, a

Master Servicing Agreement, a Subservicing Agreement, a Custodial Agreement, a Trust

Agreement, & other agreements to be determined in discovery.  That loan pool is insured with both

Mortgage Insurance and Credit Default Swaps and the only way to collect is to foreclose.

INDYMAC keeps records of Mortgage Insurance and Credit Default Swaps related to the

Mortgages.

83.    (*) INDYMAC is not Owner and Holder of the Note.

COMPLAINT

84.     JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, through its attorneys ANTHONY DEMARLO at the law firm MCCURDY & CANDLER, L.L.C., IS attempting to foreclose on the SECURITY DEED.

85.     A Records Search from the Clayton County Clerk's Office, conducted by Plaintiff, showed that there is no assignment of mortgage.

86.     (*) JPMORGAN CHASE BANK, NATIONAL ASSOCIATION is not the owner and holder of the Note, is not agent of the owner and holder of the Note, and has no authorization from that party to foreclose.

87.     (*) The Note is not currently held by a legal entity of the type that is authorized to own and hold Notes (e.g. an individual, corporation, partnership, etc.)

88.     (*) The Holder has discharged the Note by materially and fraudulently altering it, and/or cancelling and/or renouncing it.

89.     If the identity of the owner and holder of the Note is not established now, someone else may show up later holding the Note and sue Plaintiff or otherwise attempt to collect.

### *THE NOTICE OF CANCELLATION*

90.     Plaintiff elected to exercise his three-day right to cancel under TILA.  On May 14, 2007, Plaintiff mailed a notice of cancellation to Indymac at the address given in the closing papers.

91.     Indymac's representative informed Plaintiff that the notice of cancellation was not received within the three-day limit and therefore the loan would not be cancelled.  Relying on this statement, Plaintiff kept paying on the loan.

92.     "The creditor" is required by law to return "any money or property that has been given to anyone in connection with the transaction" as referred to in 15 U.S.C. 1635(b) and 12 C.F.R. 226.23(d)(2), and to release the security interest, within 20 days.

COMPLAINT

13

## GENERAL ALLEGATIONS

93.    In the United States, property purchases are typically financed by mortgages or loans that are secured by a mortgage and a note which when executed on behalf of the same entity and held by the same entity as a "note and mortgage" entitle the holder of the note and mortgage to foreclose on the property of the borrower if the borrower is in default without legal excuse or recourse.

94.    Estimates by consumer agencies forecasted that as many as 2.2 million of the nearly 70 million homeowners in the U.S. were at risk of defaulting beginning in 2008, while a reported 3 million foreclosures occurred in the U.S. in 2008. Upon information and belief, foreclosures to date during calendar year 2009 are at a higher rate than that which occurred during 2008.

95.    From 2003 through 2007, the Defendants entered into mortgages with mortgages and notes that were separated after the execution of the mortgage, the note was sold to an investor who literally and actually provided the funds for funding the loan given to the borrower. Prior to or immediately after the contract was signed by the borrower, the note was funded by a party other than the originator or servicer of the loan.

96.    The Mortgage Electronic Registration Service was created by the Defendants identified herein as co-conspirators in relation to the MERS system with the specific intent that MERS would be named the beneficiary as the nominee of the lender on the mortgages which Plaintiff were induced into signing.

97.    The foreclosure was initiated against the Plaintiff by a party with no standing to commence or maintain any foreclosure proceeding and who was a stranger to the purported loan transactions

COMPLAINT

and which party was and is unknown to the Plaintiff and, moreover, did not fund the loan of the Plaintiff and are not owed any of the funds to be repaid by the Plaintiff.

98.     The attempted foreclosure on Plaintiff's property complained of herein were initiated by Defendants who had and have no lawful right to initiate, advance or maintain any foreclosure action against the Plaintiff or his property.

99.     All Defendants participated in a conspiracy to cause the Plaintiff to enter into instruments that would result in the foreclosure of his property, to initiate foreclosure on the Plaintiff's property without the lawful right to do so; and Defendants have been unjustly enriched by the payments of the Plaintiff on the notes.

100.    The lenders and investors in mortgage-backed securities, including some of the Defendants, have sought bailout money from the United States government.

101.    The lenders and investors in mortgage-backed securities, including some of the Defendants, have used those funds to repay investors who funded the loans of the Plaintiff, thus having no liability for the notes and no right to collect on the notes and no right to initiate foreclosures on the Plaintiff's properties.

102.    Plaintiff has a mortgage that states that the beneficiary or the nominee of the lender is MERS.

103.    Plaintiff has a mortgage with MERS named as the beneficiary or the nominee for the lender.

104.    The entity that is giving notice that it will foreclose on the property of the Plaintiff is not MERS and is not the lender that originated the mortgage.

**FIRST CAUSE OF ACTION**
**TILA (15 U.S.C. § 1635)**

15

COMPLAINT

**(Against Defendants)**

105.   Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

106.   Plaintiff timely mailed a notice of cancellation to Indymac, which was "the creditor" under 15 U.S.C. § 1635(a).

107.   Indymac failed to return "any money or property that has been given to anyone in connection with the transaction" as referred to in 15 U.S.C. 1635(b) and 12 C.F.R. 226.23(d)(2), and to release the security interest, within 20 days.

108.   Defendant ONEWEST BANK, F.S.B, ISAOA stepped into the shoes of Indymac and is liable for rescission, see 15 U.S.C. § 1641(c).

**SECOND CAUSE OF ACTION**
**QUIET TITLE**
**(Against All Defendants)**

109.   Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

110.   At all times relevant to this Complaint, Plaintiff were and is in possession and has been in continuous possession of the Property, against all the world, and has paid all lawful property taxes thereon.

111.   Plaintiff has superior and legal title to, and other interest in, the Property.

112.   At all times relevant to this Complaint, Plaintiff was and is the owner of the Property and entitled to such ownership and use without interference by Defendants.

113.   Defendants' claims to any right, title or interest in the property are false and without merit.

114.   (*) Defendants are not the owners or holders of any promissory note encumbering the Property.

COMPLAINT

115.   Plaintiff brings this suit against Defendants who claim an adverse interest or estate in the Property for the purpose of determining such conflicting or adverse claims, interests or estates.

116.   Plaintiff seeks rescission of the loan, Judgment, Order and Decree quieting title to the Property in Plaintiff as of the date the Complaint in this case was filed, and such further equitable relief as the Court deems proper.

**THIRD CAUSE OF ACTION**
**FDCPA (FAIR DEBT COLLECTION PRACTICES ACT, 15 U.S.C. § 1692)**
**(Against Defendants JPMORGAN CHASE BANK, NATIONAL ASSOCIATION;**
**MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.;**
**MCCURDY & CANDLER, L.L.C.; ANTHONY DEMARLO)**

117.   Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

118.   Each Defendant is a "debt collector" under 15 U.S.C. § 1692(c)(6).

119.   (*) Each Defendant used false, deceptive, and misleading representation and means in connection with the collection of the alleged debt, in violation of 15 U.S.C. § 1692e, and unfair and unconscionable means to collect or attempt to collect the alleged debt, in violation of 15 U.S.C. § 1692f. Defendants ANTHONY DEMARLO and MCCURDY & CANDLER, L.L.C. and JPMORGAN CHASE BANK, NATIONAL ASSOCIATION falsely represented that JPMORGAN CHASE BANK, NATIONAL ASSOCIATION was the creditor. Defendant INDYMAC MORTGAGE SERVICES, A DIVISION OF ONEWEST BANK, FSB falsely represented that Indymac was the creditor. Defendants MERSCORP, INC. and MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. falsely represented that MERS was the creditor. All false statements which were made in connection with the creation of the alleged debt, were also made in connection with the collection of the alleged debt, because the collection is connected to the creation.

COMPLAINT

120.   (*) Defendants ANTHONY DEMARLO and MCCURDY & CANDLER, L.L.C. do not represent the owner and holder of any Promissory Note.  The FDCPA applies when no debt is owed to the debt collector or the debt collector's principal.

121.   As a result of Defendants' wrongful actions, Plaintiff faces a wrongful foreclosure of his property, and otherwise suffered actual and consequential damages exceeding $75,000.00 to be determined at trial.

### FOURTH CAUSE OF ACTION
### RESPA (12 U.S.C. § 2601 et seq.)
### (Against Defendants ONEWEST BANK, F.S.B, ISAOA; MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.)

122.   Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

### *COUNT I: YIELD SPREAD PREMIUM*

123.   (*) The Lender paid an undisclosed "Premium Yield Adjustment," otherwise known as a Yield Spread Premium, to the broker, for no service or work other than the choice of a loan with a high interest rate, in violation of the anti-kickback provision of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 ("RESPA").

124.   Institutional lenders normally are not required to disclose a Yield Spread Premium. The reason is that institutional lenders sell their loans in a true "Secondary Market Transaction" sometime after the loan is closed. This means that the loan is sold at a later time and their true "Yield Spread" or additional revenue is not yet known.

125.   (*) However, in this case, the Loan was sold before it was funded.

126.   (*) The trading among MERS members is not a true "Secondary Market Transaction."

127.   (*) Therefore, the Yield Spread was known.

18

COMPLAINT

## *COUNT II: RESPA KICKBACK*

128.    Plaintiff restates and realleges the above paragraphs as if fully set forth herein.

129.    The claim stated in this Count is brought under RESPA, 12 U.S.C. § 2601, et seq. Plaintiff is a party to a federally related mortgage loan pursuant to 12 U.S.C. §§ 2602(1) and 2607.

130.    As part of the scheme alleged in this Complaint, MERS members including the Lender give, and MERS accepts, kickbacks pursuant to an agreement or understanding that business incident to or part of real estate settlement services involving federally related mortgage loans shall be referred to MERS. The Lender gave such a kickback in this case. Such kickbacks violate 12 U.S.C. § 2607(a) and are not waivable violations.

131.    When a MERS member, including the Lender, originates a federally related mortgage loan, including the loan in dispute, and registers the note and mortgage with MERS, it passes on the $3.95 MERS registration fee to the borrower. It passes on the fee by including it within the fees disclosed on the HUD-1 Settlement Statement.

132.    The MERS member, including the Lender, kicks back to MERS the $3.95 registration fee received from the borrower, including Plaintiff, upon payment of the settlement costs. This kickback is payment for avoidance of government recording fees for all subsequent transfers of any interest in the mortgage. Such avoidance is made possible by the MERS registration system.

133.    The MERS member, including the Lender, kicks back the MERS registration fee to MERS pursuant to an agreement or understanding that the business of registering all subsequent sales of the note and mortgage should be referred to MERS. Such kickbacks violate 12 U.S.C. § 2607(a).

134.    Such kickbacks occurred in connection with the settlements of the federally related mortgage loans to which Plaintiff was a party.

19

COMPLAINT

135.   Pursuant to 12 U.S.C. § 2607 Plaintiff is entitled to three times the amount charged for the settlement services involved and Plaintiff is further entitled to costs and attorneys fees, to be paid by the Defendants jointly and severally.

### FIFTH CAUSE OF ACTION
### (Conspiracy to Commit Fraud and Conversion)
### (Against Defendants JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ISAOA; ONEWEST BANK, F.S.B, ISAOA; MERSCORP, INC.; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.)

136.   Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

137.   All Defendants formed an association to conspire to deprive Plaintiff of his property through fraud and misrepresentation that would result in Plaintiff's qualifying and entering into loan agreements which would eventually result in Plaintiff's inability to make payments and stay in his property.

138.   Upon information and belief, Defendants intended that the Plaintiff's loans would be packaged with other loans and sold on the secondary market, resulting in a profit to Defendants.

139.   Defendants knew prior to their origination of the loan or acceptance of the loan for servicing and subsequent transfer of the loan that Plaintiff were not qualified to make the payments under the loan; however, Defendants knew or should have known that Plaintiff would rely and did rely on Defendant's representations as alleged herein related to Plaintiff's ability to repay the loan or to refinance the loan in taking the loan and signing the documents.

140.   Defendants violated Federal and State laws as alleged herein in procuring Plaintiff's signatures on the loans.

COMPLAINT

20

141.    Defendants' legal objective of packaging the loans made to Plaintiff with other loans and selling the loans was accomplished by illegal means in procuring the loans because of Defendants' violation of federal and state laws as alleged herein.

142.    Upon information and belief, Defendants knew that the loan would be subject to foreclosure as a result of Plaintiff's inability to make payments on the loan as a result of Plaintiff's inability to qualify to refinance the loans at a later date because of Defendants' false reporting of negative credit information, and thus the Defendants committed acts which constitute unlawful equity stripping.

143.    Upon information and belief, the balloon payment was not properly disclosed to Plaintiff.

144.    Defendants intended that Plaintiff would default on the loan and Defendants would be in a position of seizing Plaintiff's property in a foreclosure action, unlawfully depriving Plaintiff of his property.

145.    Defendants, and each of them, in furtherance of the conspiracy and agreement alleged herein, acted in a concerted manner to target Plaintiff and similarly situated individuals as borrowers, to misrepresent the loan terms and/or to misrepresent Plaintiff's qualification for the loans, knowing that such action or actions would result in Defendant's ultimate possession of the properties of the Plaintiff and others following foreclosure.

146.    As a result of Defendants' conspiracy described herein, Plaintiff has suffered injuries which include loss of reputation and a decreased credit rating which has, or will, impair Plaintiff's ability to obtain credit at a more favorable rate than before the decrease in credit rating, the loss or anticipated loss of his property and other financial losses according to proof.

COMPLAINT

147.   Defendants' conspiracy to unlawfully deceive Plaintiff into taking the loans alleged herein was willful and wanton, justifying an award of punitive damages.

**SIXTH CAUSE OF ACTION**
**(Conspiracy To Commit Fraud Related To MERS System)**
**(Against Defendants JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ISAOA;**
**ONEWEST BANK, F.S.B, ISAOA; MERSCORP, INC.; MORTGAGE ELECTRONIC**
**REGISTRATION SYSTEMS, INC.)**

148.   Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

149.   Upon information and belief, Defendants, and each of them, did knowingly and willfully conspire and agree among themselves to engage in a conspiracy to promote, encourage, facilitate, and actively engage in fraudulent and predatory lending practices perpetrated on Plaintiff as alleged in the Second Claim for Relief herein by the actions of the Defendant conspirators as part of the business policies and practices of each Defendant conspirators in participating in the MERS system.

150.   Upon information and belief, the Defendant conspirators are or have been shareholders in MERS and/or members of the MERS system and, as to Defendant conspirators, have, through their employees and agents, served as members of the Board of Directors of MERS, and participated in the design and coordination of the MERS system described in this complaint.

151.   Upon information and belief, the Defendant conspirators have conspired among themselves and with other unknown parties to:

152.   A. Develop a system of earning profits from the origination and securitization of residential loans without regard for the rights of Plaintiff, by engaging in predatory and deceptive residential lending practices as alleged in this complaint above; and

COMPLAINT

153.    B. In furtherance of the system referred to immediately above, the Defendant conspirators intentionally created, managed, operated, and controlled the Defendant MERS for the specific purpose of MERS being designated as a sham "beneficiary" in the original mortgages securing those loans, including the loan made to Plaintiff and other similarly situated individuals by the originators of the loans which originators executed the mortgages and each of the Defendants herein; and

154.    C. Defendant conspirators intentionally created, managed, operated, and controlled the MERS system with the unlawful intent and for the unlawful purpose of making it difficult or impossible for Plaintiff and other victims of such industry-wide predatory policies and practices to identify and hold responsible the persons and entities responsible for the unlawful actions of Defendants.

155.    Upon information and belief, Defendant conspirators, through creation of the MERS system alleged herein, adopted and implemented residential lending underwriting guidelines for use in Nevada and in other states which

156.    A. Were intended to, and did, generate unprecedented profits for the Defendant conspirators and their co-conspirators at the expense of Plaintiff and other persons who were fraudulently induced by the Defendant conspirators and their coconspirators into taking out residential loans that were known by the Defendant conspirators and their co-conspirators, at the time the loans were originated, were likely to result in default; and,

157.    B. Were likely to result in foreclosure on those loans and loss by Plaintiff and other borrowers of their properties, with reckless disregard and intentional indifference by the Defendant conspirators and their co-conspirators of the likelihood of such foreclosure.

COMPLAINT

158.    Upon information and belief, the MERS system was created for the unlawful purpose of hiding and insulating the brokers and originators of predatory toxic loans from accountability and liability by creating an entity which simultaneously informed all lenders who originated loans that named MERS as the beneficiary of the following:

159.    A. MERS would never own or acquire any actual beneficial interest in any loan in which it was named as beneficiary under the mortgage, and that

160.    B. MERS could be named as beneficiary for purposes of public notice and notice to the borrower and would act in that capacity if so designated by the lender who originated the loan.

161.    Upon information and belief, the intent and purpose of the Defendant conspirators and their co-conspirators in the creation, management, operation, and control of MERS was, without limitation, to make it impossible for the borrowers, their attorneys, the courts, the government, and anyone other than the Defendant conspirators who created and controlled MERS, to identify the actual beneficial owner of any particular loan or the property which was the collateral securing that loan until such time, if any, that foreclosure action was initiated. As a result, Plaintiff, and other similarly situated individuals, was deprived of the right to attempt to modify the toxic loan, as the true identity of the actual beneficial owner was intentionally hidden from Plaintiff and other similarly situated individuals.

162.    Upon information and belief, the Defendant conspirators' actions in creating the MERS system, which was dependent on fraudulent and deceptive practices that included, but were not limited to, making loans to consumers such as Plaintiff in violation of a number of Federal laws, created a system to unlawfully deprive Plaintiff and others similarly situated of their interest in their properties.

COMPLAINT

163.    Upon information and belief, Defendant conspirators utilized funds received as part of the Troubled Asset Relief Program (TARP), the TALF program, and other government payouts to further the conspiracy to defraud Plaintiff, and others similarly situated, to deprive them of their money, to deprive them of their properties, to unlawfully foreclose on loans made to borrowers, to pay investors in the mortgage-backed securities which were comprised of the loans made to Plaintiff and others similarly situated, and to pay bonuses to employees and officers of the Defendant conspirators based on their devising the sub-prime mortgage-backed products which were securitized by loans of the type issued to Plaintiff and others similarly situated, and collateralizing and selling such products in the United States and abroad.

164.    As a result of Defendant conspirators' conspiracy described herein, Plaintiff has suffered injuries which include loss of reputation, and a decreased credit rating which has, or will, impair Plaintiff's ability to obtain credit at a more favorable rate than before the decrease in credit rating, the loss or anticipated loss of Plaintiff's property, and other financial losses according to proof, including attorneys' fees and costs incurred in this matter.

165.    All Defendants who are presently engaged in foreclosure procedures against the Plaintiff herein know and have reason to know that they have no entitlement to any payments by the Plaintiff and that the Defendants have no lawful right to foreclose upon the Plaintiff's property.

166.    Defendant conspirators' actions were wanton, willful, and reckless thereby justifying an award of punitive damages against Defendant conspirators, and each of them.

**SEVENTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**(Against Defendants JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ISAOA;**
**ONEWEST BANK, F.S.B, ISAOA)**

COMPLAINT

25

167.    Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

168.    Defendants' deceptive scheme as alleged herein unjustly enriched Defendants, and each of them, to the detriment of Plaintiff, and similarly situated class members, by causing Defendants, and each of them, to receive excessive monetary payments from Plaintiff.

169.    Specifically, Plaintiff has been injured in the property and right to peaceful enjoyment of his primary residence in a variety of ways, including but not limited to: Plaintiff were handicapped in understanding the terms of those loans. This constituted a misrepresentation that caused Plaintiff to make his monthly payments from the cash that represented the equity in his property to the Defendants. Moreover, upon information and belief, the variety of additional and separate payments charged for services and other items tangential to the loan were prohibitive. The result is that Plaintiff assumed financial burdens that she would not otherwise have assumed, and paid Defendants more than she justly should have owed.

170.    The loans made to borrowers were then repackaged, reassigned, and/or resold, each with a margin of profit for the assignee/buyer that would not otherwise have existed had the borrowers not been deceived by the original terms of the loan and/or the lack of disclosures as alleged herein.

171.    Plaintiff has paid or continues to pay an inflated interest rate that, upon information and belief, would not have been agreed to but for the failure to understand the documents and otherwise disclose the true terms and costs of the loans, tangential services, and out-of-pocket costs.

172.    Upon information and belief, all payments made to the Defendants servicing the mortgages of the Plaintiff is not due.

COMPLAINT

173.    The Defendant who has purportedly serviced the loans of the Plaintiff did not fund the loans, did not lend any money to the Plaintiff, and has no lawful right to foreclose upon the property of the Plaintiff if the payments are not made by the Plaintiff according to the notes that were executed by the Plaintiff at the time the loan was received.

174.    Upon information and belief, all sums advanced for loans to the Plaintiff by investors have been repaid, settled, satisfied or otherwise are no longer outstanding.

175.    Accordingly, Defendants, and each of them, should be ordered to return all funds obtained as a result of their deceptive scheme to Plaintiff and class members.

**EIGHTH CAUSE OF ACTION**
**(Fraud in the Inducement)**
**(Against Defendants JPMORGAN CHASE BANK, NATIONAL ASSOCIATION, ISAOA;**
**ONEWEST BANK, F.S.B, ISAOA)**

176.    Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

177.    Defendants, through its agents, failed to disclose the material terms of the loans and incidental services to Plaintiff, by, inter alia, failing to explain the fact that Plaintiff were not qualified to enter the loans on the terms stated and failed to advise the Plaintiff of the fact that Defendants had no lawful right to foreclose upon the properties of the Plaintiff.

178.    Defendants concealed the true terms of the loans, and the risks of the transactions, including, but not limited to, negative amortization, prepayment penalty provisions, the risk of default and the risk of foreclosure from Plaintiff and similarly situated class members and failed to advise the Plaintiff that the Defendants had no lawful right to foreclose upon their properties.

179.    Defendants misrepresented the ability of Plaintiff, and others similarly situated, to qualify for the loans.

COMPLAINT

180.    Defendants knew or should have known that had the truth been disclosed, Plaintiff would not have entered into the loans.

181.    Defendants intended to induce Plaintiff into reliance upon these representations and failures to disclose.

182.    Defendants failed and refused to advise the Plaintiff that the Defendants had not funded the loans and that no payments were due to the Defendants by the Plaintiff and that the Defendants had no lawful right to sell the Plaintiff's property at a sale in foreclosure nor any right to deprive the Plaintiff of his property by any means.

183.    But for the failure to disclose the true and material terms of the transactions that began the loans and the failure to disclose that the Defendants had no right to foreclose upon the property of the Plaintiff, that Plaintiff would lose his property, Plaintiff could have read the agreements and additional documents and would have been alerted to issues of concern. Defendants' intentional misrepresentations, and the failure to disclose the material terms of the transaction and the failure to state that the Defendants have no right to collect payments from the Plaintiff nor any right to foreclose on his property, induced Plaintiff to enter into the loans as alleged herein.

## NINTH CAUSE OF ACTION
### (Injunctive Relief)
### (Against All Defendants)

184.    Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

185.    Plaintiff faces the foreclosure of his property on **June 1, 2010**.

186.    Plaintiff has no adequate remedy at law to stop this unlawful foreclosure and eviction.

COMPLAINT

187.    The Plaintiff will suffer irreparable harm from the loss of his property and the Defendants will suffer nothing since no payments are owed to them on account of the notes and mortgages and any foreclosure pursued by them will be and is and has been unlawful.

## TENTH CAUSE OF ACTION
### (Declaratory Relief)
### (Against All Defendants)

188.    Plaintiff incorporate each and every paragraph of this Complaint as if fully set forth here.

189.    As alleged in Plaintiff's claims regarding the Defendants' violations of state and federal laws, the Defendants have violated Plaintiff's rights under federal and state law.

190.    The Defendants have proceeded with foreclosures against the Plaintiff or threatened foreclosures against the Plaintiff for which the Defendants are not owed any payments, have no lawful right to foreclose and have unlawfully deprived or attempted to deprive the Plaintiff of his property.

191.    Plaintiff seeks a declaratory judgment against Defendants stating that Defendants have violated Plaintiff's rights under federal and state laws as alleged above.

192.    Plaintiff is entitled to an accounting from each Defendant of all funds handled in any way concerning the mortgage loan.

### Prayer for Relief:

WHEREFORE, Plaintiff prays this court enter an order providing relief as follows:

193.    Plaintiff prays this honorable Court take jurisdiction of this case.

194.    Enjoin, immediately, all Defendants, during the pendency of this action, and permanently thereafter, from selling the Property; from recording, selling, assigning or transferring mortgages or obligations relating to the Property or otherwise encumbering the Property;  from instituting,

COMPLAINT

29

prosecuting, or maintaining nonjudicial or judicial foreclosure, ejectment or F.E.D. proceedings against the Property or its occupants;  or from otherwise taking any steps to deprive Plaintiff of ownership and/or enjoyment of his property.

195.   Award to Plaintiff their reasonable costs, disbursements and prejudgment interest.

196.   Declaratory judgment that the alleged contract is unconscionable.

197.   Declaratory judgment that Plaintiff has clear title to the property, free from any encumbrances by Defendants, and that Defendants have no valid security interest in Plaintiff's property; or in the alternative, reformation of the contract.

198.   An accounting from each Defendant of all funds handled in any way concerning the mortgage loan.

199.   A Judgment and Decree quieting title in favor of Plaintiff.  Order all Defendants to rescind and cancel the alleged loan in its entirety and return to Plaintiff any and all of their original signed documents; Order all Defendants to take all action necessary to terminate any security in the Property created under the transaction and that the Court declare all such security void, including but not limited to the aforementioned mortgage.

200.   For award of damages against Defendants and each of them on Plaintiff's claims as applicable under federal law as alleged above in an amount to be shown at trial;

201.   For an award of damages against Defendants, and each of them, on the Plaintiff's state law claims, whether general, special or punitive as alleged above, in an amount to be shown at trial;

202.   For an award of costs as provided by law;

203.   For an order of rescission on behalf of Plaintiff;

COMPLAINT

204. For a temporary restraining order and preliminary and permanent injunction prohibiting Defendants, and their officers, agents, employees, servants, and attorneys, and those persons in active concert or participation with any of them or each of them, as specifically alleged above, from transferring any interest in the subject properties, from proceeding with any foreclosure action as to the Plaintiff's residence and/or proceeding with any collection action against the Plaintiff;

205. For a declaratory judgment holding that Plaintiff's rights were violated as alleged above;

206. That Plaintiff have and recover from the Defendants pre-judgment interest as may be determined by statute and rule;

207. That this Court grant such other and further relief as it deems just and proper.

Finally, Plaintiff is not attorneys and is inexperienced in procedure as practiced in the Federal Courts. If this submission is found wanting in one or more particulars, it is incumbent upon the Court to inform Plaintiff of the deficiencies, their specifics and assist the Plaintiff in correcting the submission, and the Plaintiff hereby respectfully requests such assistance.

Executed on: May 21, 2010

Robert Webb Jr.
198 Peachtree Ct
Riverdale, GA 30274

COMPLAINT

31